You may be seated. The last case this afternoon is 410-0902 and 412-003 for the appellant Jacqueline Bullard and for the appellee Anastasia Brooks. I want to thank you both counsel for being here so early. I know we asked you to get here a half hour early and this is why. So in the event that we are moving ahead we will be able to start earlier and I appreciate you being here so we can do just that. Ms. Bullard you may proceed. May it please the court, counsel. Counsel. My name is Jackie Bullard and I represent the two respondent minors in this case, Darius L. and Christopher P. These two otherwise unrelated cases have been consolidated for argument on a single issue whether the Adams County Detention Center treatment program constitutes custody for purposes of sentence credit. Juvenile court proceedings are creatures of statute. What the state and courts may do to children in juvenile court are limited by the provisions of the Illinois Juvenile Court Act. The act provides that when a minor has been adjudicated delinquent there is a list of authorized dispositions. Two of those dispositions are relevant for the argument today. The first is the court is allowed to place a child in residential treatment under Section 740 of the Juvenile Court Act. Another disposition that is available to the court is detention in a detention center. That period of detention ordinarily is limited to 30 days. If a minor is in custody in a detention center, the rule is well established that a child gets credit for all time spent in a detention center. In probation revocation proceedings the rules for accumulating sentence credit are the same for adults and children in terms of probation revocation proceedings and at a resentencing and probation revocation the minor gets credit for all time spent in The Juvenile Court Act doesn't directly define custody, but it does so indirectly through three relevant provisions. The first of those provisions is the definition of non-secure custody. That occurs when the minor is not physically restricted by being placed in a locked room or cell or being handcuffed to a stationary object. In contrast, the Juvenile Court Act defines detention as just the opposite. As a building secure facility where the minor can be locked in a cell or room and handcuffed to stationary objects. Juvenile detention homes also are defined in the Juvenile Court Act and it essentially defines the detention center at issue in this case where the two minors were held. For purposes of sentence credit in particular, the Illinois Supreme Court has also addressed what custody is. And custody focuses on restriction of freedom. Placement in an institution designed for incarcerating individuals has always been considered custody in the state of Illinois. Regardless of the label that Adams County attaches to its detention center treatment program, it constitutes custody under the definitions in the Juvenile Court Act and as set forth by the Illinois Supreme Court. Let me ask you a question I'm kind of curious about. It may not be directly helpful to the case, but this situation in Adams County sounds strange. Been around a long time. To your knowledge, just because I'm curious, are there any other facilities you're familiar with in the 4th District or for that matter anyone in the state of Illinois like this? I am not aware of any institutions. I haven't been in every detention institution in the state. I have been in several. I am aware that probably about 5 or 6 years ago I was in the Franklin County Detention Center which is in the 5th Judicial District. They run a treatment center out of their detention center there, but it's not a building secure program. That's as close as I can get for you. The conditions in this case meet every definition of detention. Children are kept in locked cells that look like traditional jail cells. Their movement is restricted. They are not allowed to leave at will. In this case there is absolutely no segregation from these detention program minors and any of the rest of the general population. They eat with the general population kids. Their cells are interspersed with general population kids. Their treatment coordinators are detention officers and they have no special training. That is absolutely correct. The one thing I wasn't clear on, when they are having their group sessions, are they mixed in with the detention kids on that? The record is not necessarily clear on that. We know that they are mixed in with the general population for every other purpose and we know that all children held in the Adams County Detention Center are eligible for treatment if needed. So if a child in the general population is in need of mental health counseling, they have retained a mental health counselor who will provide services to the general population child. I'm guessing though that they run some group sessions where the kids sit around and talk and have a facilitator. There is nothing in the record that says whether those are combined between the program people and the detention people? Correct. The program is labeled a treatment program, but when asked to describe the program, it is more properly characterized as a 90 day behavioral modification program. There are lots of ways to modify human behavior without providing treatment. It appears that is what Adams County is attempting to do here. In Christopher's case, Christopher was a child who very clearly had some substance abuse issues and some real troubling issues at home. The response was for the treatment coordinator to sit down with him and talk to him about why it is important to listen to authority and to fill out some worksheets on why you shouldn't use drugs. Nothing that even remotely resembles true treatment. I noticed from the record that in Christopher's case, his attorney made the argument that this was not even an authorized disposition at the time of his original sentencing. But then they never took an appeal from that. They did not. In this appeal, we are arguing only the issue of sentence credit. These are children who do not want to go back to court for any reason, probably understandably. But if you examine the record in Christopher P., it is not surprising that there is no notice of appeal. He was not admonished at any point that he had the right to appeal anything. He was not even admonished of the potential sentence that he would face in any of the admissions that he entered. There are substantial issues related to this case in terms of how cases are handled there. I think that is probably the most straightforward explanation. There were no appellate admonitions at the time. But you would think in making the record that his attorney was thinking in advance if this is going to be the disposition, then we are going to appeal it. And then nothing happened after that. Assuming the court didn't admonish him, do you think the defense attorney still knows he has the right to appeal? I think that is a fair assumption. I think that one of the complicating things that you talk about when you are talking about juvenile appeals and a child who has a pending placement in this detention center treatment program is concerns, the minor may be concerned that he might not have the best outcome if he challenges what the trial court is doing in the case. So for whatever reason, we are not privy to what the consultation was between counsel and the minor, but for whatever reason the minor did not challenge the initial placement in the treatment program. In Darius' case they didn't even challenge that at the time of the sentencing. No, they waited until it was time to ask for sentence credit for that time in custody. The state is understandably, both of these cases are moot before this court. They are, I believe, both subject to the public policy mootness exception, the public policy exception to the mootness doctrine. In Christopher's case, Christopher's case went on a standard briefing schedule that it goes through for OSAD, which is first in, first out. We brief cases, but because of the backlog we don't brief the cases in a timely manner. When Darius' appeal came through the pipeline, because it was the same issue, we accelerated that appeal. And even accelerating the appeal, he was out of Department of Juvenile Justice in his entire sentence. He had been discharged, completely discharged from the Department of Juvenile Justice before the state's brief was filed in this case. So this is one of those instances where no matter how hard the attorneys try to get this case before the appellate court, it will almost certainly be moot in every particular case. The issue of the unauthorized imprisonment of children is an issue of important public policy. The Supreme Court has recognized that repeatedly. This is a case where at a prong two of the public policy exception, there is a need for an authoritative determination that it is desirable to guide public officials in the performance of their duties. In this case, the trial court needs guidance because the trial court believes it's authorized. The authorization issue, though, is not before us on the credit for time served, is it? The trial court believes that this is not custodial. Putting these children in this program. So he's going to continue not to reward sentence credit. I think he said it's not detention. Didn't the trial judge say this is not detention? They're in there for treatment. The distinction I think you're making is between custodial and detention could be a difference. If it meets the definition of detention in the Juvenile Court Act. The definition of detention in the Juvenile Court Act talks about a locked facility. If you're in a locked facility, you're detained. Whether you call that custody or you call that detention. It's not a locked facility, but you're in custody. A minor is taken into custody at midnight on a Friday night by police. He also has a health issue, but he's a runner. He's admitted to the hospital and you shackle him to the bed. He receives treatment, he has a detention hearing Monday morning, first thing, and he's detained. Does he get credit for Saturday and Sunday? I think the answer to that is it depends. As soon as that child is arrested and taken into custody, even if it's for five minutes, that child gets credit for an entire day of sentencing. That's what I meant. In that instance, he's in custody, but he's not in detention. He's not in a locked facility. He's not in an institution. He's not in an institution that's designed to hold him securely. He happens to be in a public hospital and somebody put handcuffs on him. Because otherwise he'll run, which is detrimental to his health as well as the fact that you want to keep him in custody. Correct. There is credit for all custody. All detention time is custody, necessarily. I agree, but not all is all custody time detention. I think that was the distinction Judge Pope was making. No, you could be in custody and not be in detention. You could be in custody for purposes of sentence credit. Isn't the state correct in arguing that there is no jurisdiction to weigh in on the original probation order? I have to apologize. I think I unartfully drafted my argument to begin with in the original brief. You do have before you the issue of sentence credit. If you find that this is detention, though, for purposes of sentence credit, it will necessarily follow that the 30-day cap applies. Detention is detention is detention. That's for the cases down the road and we'll have to trust that the trial court would apply it without our addressing something we have no jurisdiction over. I suppose that my argument to you is because it is a holding that necessarily follows that it can legitimately be mentioned in the appellate court that this is detention for purposes of sentence credit. By the way, if we had jurisdiction over this point, here's what we'd want to say. I think that this is an extraordinary case. This is a case where children are systematically being held for months and months and months on end. I'm not sure that the trial court is going to get it. I agree with you, Your Honor. I don't want to go too far off the record, but I've actually been in contact with trial counsel. The thing is you're stuck with what the juvenile wants to do. If the juvenile doesn't want to appeal for whatever reason that the juvenile doesn't want to appeal, that's what you're stuck with. It's not counsel's decision to file the notice of appeal and take this issue up. Because of that, because I think of some of the unique problems that arise with juvenile appeals and the fact that this is a systematic deprivation of liberty that is taking place in this county. Aren't there people who come out and inspect your detention centers and make sure that you're in compliance? The Department of Corrections is responsible ultimately for inspecting detention centers. And that's to make sure that you're providing safe beds and nutritious food and a base level of treatment. I don't know necessarily that they're looking at how long they're keeping kids, especially if you call it treatment. Aren't some of the dollars coming from federal money? Is that not right? That's not in the record in terms of whether Adams County is using federal dollars to fund this treatment program or not. And I don't know the answer to that, whether they're using federal dollars for that or not. But if it's labeled a treatment program and it's akin to the Franklin County program, which is a treatment program where the treatment takes place in the detention center, but it's not a building secure treatment center, I don't know that this is an issue that anybody's going to stumble across who's doing an inspection of the facilities. Does the court have any further questions? In that case, I would respectfully request that this court hold that both minors were entitled to sentence credit. Thank you, counsel. Ms. Brooks? May I please the court? My name is Anastasia Brooks and I represent the people in both of these cases. First of all, I noticed that the respondents cite this concept of custodial detention, but they talk about the Juvenile Court Act being a statute, but yet there's no reference to the words custodial detention actually used in the statute that they cite. They're actually melding these two separate concepts, one of custody and the other of detention, citing different statutes dealing with credit for custody and the limits on imposition of sentences of detention in conjunction with dispositions either by itself or in conjunction with the sentence of probation. So for that reason, these are actually two entirely distinct issues. So if they want to cite an exception to the mootness doctrine, a public interest exception to the mootness doctrine for one of these, they really have to go through the analysis to show that that public interest exception to the mootness doctrine actually applies to both questions. They cite whether the 30-day limit on detention was exceeded because they claimed that this was in fact detention and whether they were actually entitled to credit for custody, time in custody. So those are separate issues and they really have that burden of showing an exception to mootness for both of them, not just lumping them together and calling it custodial detention. The respondents point to institutional conditions in this program, but yet the case that the state cited shows that it's really a question of legal status. And I guess down to the question also of whether these minors could be prosecuted for escape, because these are not minors simply locked for the entire term inside a locked facility. They're allowed to have release for work assignments and are also permitted to go home. Wait, wait, release for work assignments. That might still be inside the general area. With a detention officer standing there with them, right? Sure, but it's not being actually locked in their cell the whole time. If they get outside, not necessarily the walls of the facility, but outside the secure building part of the facility, then that's sort of different because then they talk about, there has to be a need to show that while their legal status is custody, which means that their argument, the implication of that argument would be that if they fail to return, if they're said, you have to be here at 12 p.m. on a certain day from your leave at home, if you're one minute late, you are in violation of the escape statute because they're legally in custody. That's their argument. That's the implication of their argument. They're not necessarily admitting that they could be prosecuted for escape if they fail to adhere to the terms of whatever release that they're permitted. How long is it before they're allowed the privilege of working in the facility? I'm not sure the answer to that. There's some reference in the record. I'm not sure if there's a reference in the record as to whether a certain amount of time has to last when they're, say, permitted to go home or if they have to make some progress in treatment. And also for the work privileges. They have to be in custody in the detention center for six to eight weeks before they get to work, according to the record that I reviewed. Well, the state's argument is that the respondent is requesting credit for custody, therefore it's their burden to show that their legal status, not just where they were living, but their legal status was custody. What shows that they're not in custody as compared to somebody else in that detention center? Especially in the first two months that they're there. How are they different from the regular detainees? Well, Your Honor, I can't really answer that other than to say that I'm not authorized to concede the issue of custody in this appeal because our primary argument is on the mootness issue. So this court doesn't really have to reach this question. Let's assume that we find, although it's moot that the public policy exception applies, and we're to the issue. I want to know from you, based on what you've seen in the record, how are these children treated differently than the detainees? They sleep in the same cell, on the floor, on a mat. They're locked in their cells at night. They eat dinners and meals and all their meals with the regular detainees. Their treatment coordinator is really a detention officer with no special training. Well, Your Honor, assuming, as you said, if this court were to find the mootness exception properly, that is, the state has no response to the points Your Honor is making, and what the respondents point out about the physical characteristics of their environment and the lack of segregation among the treatment, etc. So you're not arguing it's non-custodial? You're primarily relying on your mootness argument? In addition on the merits, the other argument is that the question of legal status is really what's controlling, and that is the burden of the defendant who's the complaining party, the respondents, to show that they were in fact the legal status of custody, which means that they would be subject to escape. And if they want an advisory opinion on this topic to show that they're legally in custody, then they would essentially be asking for this court to also rule that they could be subject to an escape prosecution for minors in this situation. That's the advisory opinion they want. If they didn't return to the facility after a home visit, they'd be subject to having their probation revoked and being sentenced to DOJJ. And or contempt is another possibility if they violate the court order to return on a particular time. But that's different from saying that even if their behavior wasn't contemptuous, or even if the child court were not inclined to revoke their probation, it's a different question as to whether they're legally in violation of the escape statute. So you think that's the only factor a court could look at, whether they could be prosecuted for escape if they were to escape. That defines whether you're in custody or not? The state's position is that that is an indispensable part of the definition of custody. Why wouldn't that apply here? Why would that not apply here? Well, it seems like their ability to get out on leave is one thing, and it doesn't really seem like they are. They're ordered to reside there, and it just happens to be the place that detainees happen to live. The fact that it's made as a condition of probation, the respondents haven't shown an argument to say that, well, if the trial court orders it as a condition of probation, therefore it is legal custody. I believe the record showed that if they were inside the facility, it was a locked facility, although I don't specifically know the answer to that question. I'm just trying to think of, as opposed to someone who's put in detention for 10 days, they would be locked up, and if some staff member inadvertently left the door unlocked or open, they ran out the door, that would be an escape. If they were legally in custody. But that's kind of answering the question by assuming the predicate of them being in custody, therefore it's an escape. Well, if one of these guys, under the same circumstances, as opposed to being a, quote, juvenile detainee, who was there for 10 days, sees the same open door and boogies, would he be subject to being charged with escape? If he were, I'm sorry, Your Honor. Would he be capable of being charged with escape under those circumstances? The circumstances were, I'm sorry, I didn't catch all of it. Well, it's the same thing. He's there as one of these training custody things, whatever you want to call it, and there's an open door and he runs out and leaves without authority. He goes AWOL, we won't call it escape, because that might be a technical term. Is he, in fact, capable of being charged? Would he be committing the offense of escape, a juvenile delinquent? Well, Your Honor, I don't know the answer to the question. And it's really the respondent's burden to produce the authority to persuade that that is the case. And that's why I said even if it is an open question or a question of first impression, it gets into the elements of the mootness doctrine exceptions. If we were to hold that he's in custody under these circumstances, then would it follow that he would be capable of being charged with escape? Most definitely, and that would be the case that the state might anticipate that one of these minors might eventually feel the return from leave at home and then claim, well, he's not really in custody because he shouldn't be prosecuted for escape. I mean, the state might be whipsawed in the sort of like alternate ideas of, well, he's custody for credit but not custody for escape, and there needs to be a clear showing that they don't make this disconnect in the future. That's the state's primary concern. Yes, Ms. Bullard, the same question I'd like to ask you. This is kind of a strange enterprise in Adams County. Are you familiar with any other in the Fourth District or anywhere? No, Your Honor, I've not researched that question, so I can't really provide any. Ms. Brooks, I just want to ask you this too. Under the statute, the maximum sentence a juvenile can be sent to a detention center for in detention is 30 days. I believe the statute says in detention. It doesn't say in a detention center, it just says in detention. But that's either by itself or in conjunction with probation. Right. These kids who are given probation are being held in a detention center for 117 to 122 days, not even the 90 days that the treatment program is supposed to last. So they're actually doing a longer time in detention as a condition of probation than they could be sentenced to straight out as a straight sentence. Well, Your Honor's question says that they're serving this time in detention, which is essentially answering the question that we're dealing with here, which is when they are put in the treatment program and they reside in the detention center, is that detention? What makes it a treatment program? What is different about it? Well, I guess we don't need to get into it, because that part of the sentence goes out of field. I guess what I'm asking, though, is what makes this any different from the kid who's there on a 30-day detention sentence? Well, they did talk about some differences in terms of what treatment services that are provided to them and their ability to have work assignments and have leave to go home, for example. There are some differences, although it doesn't seem like maybe a major difference to a minor who spends most of the time in the facility. But there are some technical differences that they are treated differently, and they call it treatment and not detention. So that's the issue. They call it treatment. That's the issue, is despite whatever they choose to call it, and the trial court calls it treatment, does it really affect detention? And that's the issue that they would want this court to decide under the public interest exception in the mootness doctrine. And I'd like to also address that in my remaining time, if I would. Thank you, Your Honors. And as to the mootness issue, the respondent's claim under Hernandez, which should be the controlling decision under this case, that they make the claim that there was no disarray or conflict in Hernandez because the appellate decision in that case was consistent with preexisting law. But yet what Hernandez actually said was that because this was an issue of first impression, no conflict or disarray in the law exists. And in case there's any question about that, they also said, thus no precedent exists on this issue, and the state is seeking a purely advisory opinion on a question of law that has yet to be decided. So it didn't mean just because the appellate court decision below in Hernandez was consistent with preexisting law, therefore there was no authoritative resolution necessary. It meant this was a first impression question, therefore necessarily does not meet the confines of the public interest exception mootness. The other attempt to distinguish Hernandez fails as well in the sense they say, well, in Hernandez it was the appellate judges who were in need of guidance, and here it's something different. But then in other cases like Peter Sparrow, which was dealing with trial courts issuing subpoenas for pharmacy records, well, in that case there was no precedent, therefore no conflict and nothing to be resolved. And that was a trial court situation, not appellate judges. And then in J.B. was the case where it dealt with the constitutionality of an unfit statute, Section 1DQ of the Adoption Act. And they said there, same thing. Even though it's the trial courts basically deciding what the constitutionality of that statute would be, they talked about a string of advisory opinions, no conflicting precedents requiring resolution. So it's not a situation where, oh, Hernandez was different because it dealt with appellate judges needing guidance. It was a situation where it was simply applying the rule that the Supreme Court now recognizes, which is that cases of first impression don't meet the standard. And what they cite is Justice Freeman's specially concurring opinion and Christopher Kaye. And the point of emphasis here is that Justice Freeman was in the minority on this question. He was in the concurring opinion, not in the majority opinion. And his window three talks about how the court seems to be drifting towards using conflicting authority tests as a surrogate for what he calls the actual third factor. So, I mean, this is recognition that this third factor of, well, public officials need guidance, which means, therefore, the test is met. It's not true. It's the way the Supreme Court now interprets it. It means a necessity conflicting authority requiring authoritative resolution. And the only way that really can happen, practically speaking, is in the Supreme Court of Illinois when they're resolving a conflict of districts of the appellate court or conflicting opinions of an appellate court district. Because under Walgreen's case, surrogate court decisions are not precedential. So because the surrogate court decisions here to order the treatment, for example, it's not a precedential decision requiring authoritative resolution because surrogate court decisions are not precedential. So for that reason, the surrogate court decision doesn't throw the law into disarray. It doesn't create any conflicting precedents requiring resolution. There's no clear showing as is necessary in order to meet the actual terms of any one of the mootness exceptions. And the only one cited here is public interest. And the fact that also a response claim that this issue will always be considered moot is not necessarily the case because they could always ask for a stay. And they say, well, what if these trial courts say, well, I don't see any problem. I'm going to deny your stay. Well, they can always then file a petition for supervisory authority with the Supreme Court of Illinois and commit with a request for a stay from the Supreme Court of Illinois. And one judge from the Supreme Court of Illinois could stay one of these orders and then consider it in the court's supervisory authority. So there are avenues, or then that could be either directly appealed to this court as well with a stay either from the circuit court, maybe even from one of the judges of this court, and or a judge from the Supreme Court of Illinois. So there are ways of getting these cases up without expanding past the briefing time schedule. So for those reasons, it's not necessary to invoke the public interest exception, the mootest doctrine, and what the respondents really are requesting here is purely advisory opinion on a question yet to be decided, which is exactly within the confines of the Hernandez holding. And for that reason, this court need not and should not address the merits of what the respondents claim about the 30-day limit on detention and credits for custody. It will have no impact whatsoever on these minors, and it's just simply a hypothetical question that they're really posing at this point. So for those reasons, the state requests this court to dismiss both appeals on the grounds of mootness. And if you have no further questions, I thank you. Okay. Thank you, counsel. Ms. Bullard? Three brief points, one on the question of detention versus custody. In this case, the state wants to divide that inquiry, and I just would like to reiterate the discussion before that the definition of detention in the Juvenile Court Act talks about building secure facilities, and every building secure facility where a minor is not free to leave constitutes custody. On the second point, the state argues that the minors aren't necessarily subject to escape prosecutions. This was an argument that we addressed in Darius L's reply. In this case, there is testimony in Christopher P's record, where the probation officer testifies that minors are considered in the custody of probation officers when they're taken on their community outings. And in both Christopher's record, and Christopher's record is volume 15, record page 14, Darius's record is common law at 224. So that's in the stipulation that the state entered into. In both of those instances, there is a stipulation that the minors are not free under any circumstances to leave that facility without permission. That part was interesting, too, that in the certificate of detention, they list the time spent in the treatment program as detention time and add it to the total, and the court removed it. Yes, that's correct. And then finally, the escape statute itself talks about a person adjudicated, convicted, or adjudicated delinquent for an act that would be a misdemeanor committed by an adult who intentionally escapes from a penal institution, or from the custody of an employee of that institution, commits a Class A misdemeanor. So that covers both the kid who's able to scale the fence, and it covers the kid who wanders off from one of these community outings where he's in the custody of the detention officer and he leaves. It fits the statutory definition of the offense of escape. And then finally, I'd like to briefly address the mootness issue. To say that the state asks too much from Hernandez to say that you cannot raise issues of first impression under the public policy exception to the mootness doctrine. That specific requirement has never been grafted onto there. The cases where the Supreme Court has talked about issues of first impression, and there are no particular conflicts in the case, are all cases that involve issues where appellate courts need guidance. And the state referenced People v. Walgreen in particular, in the adoption of Walgreen. And in that case, the Supreme Court declined to reach the issue, because there was a plethora of well-established case law on the particular issue that was decided. And the Supreme Court found that in future cases, when these adoption proceedings come through, that if a party wanted to raise this issue, there would be plenty of time to raise the issue, because adoption proceedings move so slowly. In contrast, there is no such slow movement here. In Robert F., this court recognized you addressed a vulnerable population, mentally ill, and the question of whether they could be lawfully detained or not. The detention of minors pursuant to the treatment program in Adams County falls under that same category. Okay, thank you counsel. Court will be in recess until tomorrow morning. Thank you for spending the day with us.